UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARIN D. STASIAK,

                Plaintiff,                **DECISION AND ORDER**

                                                          17-CV-00437[1]

v.

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,
                Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before me are the parties' cross-motions for judgment on the pleadings [11, 16].[2] Having reviewed the parties' submissions [11, 16, 17], I order that this case be remanded to the Acting Commissioner for further proceedings.

**BACKGROUND**

        On July 16, 2013, plaintiff filed an application for DIB, alleging a disability onset date of April 21, 2013 due to diabetes mellitus, hypertension, skin ulcers, and high cholesterol (R. 97-101).[3] After plaintiff's claim for DIB was initially denied (R. 110), an administrative hearing was held on September 29, 2015 before Administrative Law Judge ("ALJ") Stephen

---

[1]     The parties have consented to the jurisdiction of a Magistrate Judge [18].

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers located on the bottom of the document pages.

[3]     References denoted as "R." are to the administrative record [8].

Cordovani (R.50). The ALJ issued a decision denying benefits on March 23, 2016 (R. 31). The Appeals Council denied plaintiff's request for review on March 21, 2017, making the ALJ's determination the final decision of the Acting Commissioner (R. 1-4). Plaintiff thereafter commenced this action.

ALJ Cordovani determined that plaintiff suffered from severe impairments including diabetes with peripheral neuropathy in the feet, major depressive disorder and obesity (R. 36). Nevertheless, he found that plaintiff retained the residual functional capacity ("RFC") to perform light work with minimal physical restrictions (R. 39). However, he stated that plaintiff could not engage in supervisory duties and independent decision-making, could only sustain minimal changes in work routine and processes and was precluded from climbing ladders, ropes, scaffolds, extreme heat, cold, wetness, humidity. Id. He also stated that plaintiff must be able to sit and stand at will on task. Id. ALJ Cordovani concluded that this RFC assessment did not preclude plaintiff from performing his past relevant work as a small products assembler (R. 42-43).

## DISCUSSION

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error". Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.  **Does substantial evidence support the ALJ's determination that plaintiff retains the RFC to perform his past relevant work?**

At step four of the sequential process, ALJ Cordovani determined that plaintiff retained the RFC to perform his past relevant work as a small products assembler (R. 42). Plaintiff argues that in making this determination ALJ Cordovani failed to properly weight the opinion of Licensed Mental Health Counselor ("LMHC") Lisa Marek, who worked at Lakeshore Behavioral Health ("Lakeshore"). Plaintiff's Brief [11-1], p. 12-14.

An Admission Comprehensive Behavioral Health Assessment from Lakeshore dated May 1, 2015 indicates that plaintiff's depression and anxiety ranged from mild to severe (R. 638). He reported that he "cries often – usually out of the blue". Id. His depression and anxiety were linked to his inability to work and various health problems[4] (R. 639). He had been started on Zoloft by his treating physician, Dr. Patrick Siaw, who referred him to Lakeshore due to the severity of his symptoms (R. 638-639). His mood and affect were found to be depressed (R. 640). In addition to crying spells, plaintiff's symptoms included social withdrawal and non-compliance with critical medical care (failure to regularly take the injections for his diabetes) (R. 643).

---

[4] According to the Lakeshore assessment, plaintiff's medical history included diabetes, ulcers on his feet, legs, arms, arm pits, hypertension, neuropathy, recurrent infections, and a burst appendix (R. 638). He became impotent two or three years earlier. Id. He was taking methadone for pain, Humalog and Lantis injections, Metformin, and Zoloft. Id.

Notes from Lakeshore dated June 10, 2015, again reflected that plaintiff's symptoms included irritability, anxiety, crying spells, sleep interference, chronic social withdrawal, low energy and low motivation (R. 631). Plaintiff appeared "slightly disheveled but no odor" (R. 633, 639). His mood and affect were both found to be "depressed" (R. 633-634). He was diagnosed with major depressive disorder "moderate" (R. 635). On July 15, 2015, his dosage of Zoloft was doubled from 100mg to 200 mg (R. 687, 689).

On September 9, 2015, LMHC Marek completed a mental impairment questionnaire which discussed plaintiff's diagnoses, symptoms, and limitations (R. 674-677). She stated that she treats plaintiff "weekly or biweekly" with counseling sessions, and monthly for medication management (R. 674). She diagnosed plaintiff as suffering from major depressive disorder, noted that his response to treatment had been "poor". Id. LMHC Marek opined that plaintiff had a "marked" limitation in both the activities of daily living and social functioning (R. 676).[5] She also stated that plaintiff would be absent from work for "more than four days per month" due to his impairments (R. 677).[6]

In a letter dated November 9, 2015, LMHC Marek reported that although there have been "slight" improvements in plaintiff's mood with medication, he continues to report

---

[5] "Marked" is defined in the evaluation as meaning "more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, as long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis". Id.

[6] A person who would miss or be absent from work more than two days per month is generally determined to be unable to sustain substantial gainful activity. *See, e.g.,* Geraw v. Commissioner of Social Security, 2011 WL 6415475, *7 (D.Vt. 2011) ("The ALJ improperly failed to address the . . . opinion that [the claimant] would miss work approximately two days each month. This failure was not harmless, considering that the [vocational expert] testified that 'there would be no jobs' for an employee who was absent from work two or more days each month.").

difficulty sleeping on a nightly basis, frequent symptoms of anhedonia[7], frequent lack of motivation and energy, daily feelings of irritability, poor concentration, and feelings of hopelessness and worthlessness (R. 691). Some of these symptoms were noted by plaintiff's other medical providers as well. Dr. Abdul Naqash, who was treating plaintiff for his leg ulcers, noted on January 13, 2016, that plaintiff "has been anxious lately and hasn't been very particular about what he is eating" (R. 708), and on March 23, 2016 reported that plaintiff "has been stressed out lately and hasn't been managing his diet" (R. 711).

ALJ Cordovani gave "little weight" to LMHC Marek's opinion because she is not considered an "acceptable medical source", her opinion was not supported by "objective medical evidence", and her opinion was based "solely on [plaintiff's] complaints and not based … on any clinical findings or results of mental status examination" (R. 42).

Because LMHC is an "other source" rather than an "acceptable medical source," her opinion is not presumptively entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, *2-3 (S.S.A. Aug. 9, 2006). However, SSR 06–03p directs that opinions from "other sources" such as LMHC Marek are "important", and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *See* Seignious v. Colvin, 2016 WL 96219, *6 (W.D.N.Y. 2016) citing SSR 06–03p, 2006 WL 2329939, *3. "SSR 06–03p further directs ALJs to use the same factors for the evaluation of the opinions of 'acceptable medical sources' to evaluate the opinions of 'medical sources who are not "acceptable medical sources,"' such as licensed social workers." Canales v. Commissioner of

---

[7] "Anhedonia" is "total loss of feeling of pleasure in acts that normally give pleasure". Laracuente v. Colvin, 212 F. Supp. 3d 451, 454 (S.D.N.Y. 2016), *citing* Dorland's Illustrated Medical Dictionary at 91 (32nd ed. 2012).

Social Security, 698 F. Supp.2d 335, 344 (E.D.N.Y. 2010) (quoting SSR 06-03p, 2006 WL 2329939, *4).

Moreover, LMHC Marek's opinion is consistent with findings in the record as to plaintiff's mood and affect (R. 633, 634, 640), his disheveled appearance (R. 633), and his failure to regularly take critical medication and to follow diet restrictions (R. 643, 708, 711). In any event, the fact that LMHC Marek's opinion was based upon the plaintiff's subjective reports relating to his symptoms does not, by itself, warrant the rejection of the opinion. "In the context of mental health treatment, it is often the case that psychological professionals are required to rely primarily on the statements of patients in forming their diagnoses and opinions; such "talk therapy" is the underpinning of psychiatric treatment and therapists may rely on subjective complaints elicited from patients during clinical interviews in formulating their medical opinions on functional limitations". Mays v. Commissioner of Social Security, 2015 WL 4755203, *10 (S.D. Ohio, 2015) adopted, 2015 WL 5162479 (S.D. Ohio 2015). "It is axiomatic that a treating [psychological professionals] must consider a patient's subjective complaints in order to diagnose a mental disorder. In fact, whether dealing with mental health or not, consideration of a "patient's report of complaints, or history, [a]s an essential diagnostic tool," is a medically acceptable clinical and laboratory diagnostic technique". Santana v. Astrue, 2013 WL 1232461, *14 (E.D.N.Y. 2013).

In addition, plaintiff argues that once ALJ Corovani rejected LMHC Marek's opinion, in the absence of any other medical source opinion, he was not free to substitute his own opinion as to the extent of plaintiff's functional limitations. Plaintiff's Brief [11-1], p. 12. In determining that plaintiff possessed the RFC to perform his past relevant work, ALJ Cordovani included specific non-exertional limitations relating to plaintiff's psychological impairment,

including that plaintiff could only "understand, remember, and carry out simple instructions and tasks", "cannot engage in supervisory duties and no independent decision-making", and "can only sustain minimal changes in work routine and processes" (R. 39). However, ALJ Cordovani failed to conduct a function-by-function analysis or to tie these limitations to *any* medical source opinion or findings in the record.

        The Acting Commissioner contends that while the ALJ's conclusion does not "perfectly correspond" with any of the opinions cited in the record, he was entitled to weigh all of the evidence and make an RFC finding that was consistent with the record as a whole". Acting Commissioner's Brief [16-1], p. 11. In support of this proposition, the Acting Commissioner relies primarily upon Matta v. Astrue, 508 F. App'x 53, 56 (2nd Cir. 2013). However, in Matta "the ALJ expressly referenced the expert opinions of four medical sources" from which the ALJ formulated the RFC (id.), while in this case ALJ Cordovani does not rely upon *any* medical opinion.

        An ALJ cannot substitute his own "view of the medical proof [in place of] any competent medical opinion," Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). Here ALJ Cordovani failed to refer plaintiff for a consultative psychiatric evaluation or even obtain a mental RFC assessment from a state agency source. His failure to do so constitutes error in this case. *See* Martin v. Colvin, 2017 WL 370809, *4 (W.D.N.Y. 2017) (failure to obtain psychiatric assessment rendered record inadequate for determination of disability) citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996). *See also* Dailey v. Astrue, 2010 WL 4703599, *11 (W.D.N.Y.), adopted, 2010 WL 4703591 (W.D.N.Y. 2010) ("[A]n ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the medical findings in the record merely diagnose [the] claimant's . . . impairments and do not relate these

diagnoses to specific residual functional capabilities[,] . . . [the ALJ may not] make the connection himself.").

I need not discuss Acting Commissioner's additional *post hoc* arguments. It is well settled that neither the Acting Commissioner nor this Court may engage in *post hoc* efforts to determine what the ALJ would have done had the ALJ considered the issue. *See* McKinstry v. Astrue, 2012 WL 619112, *4 (D. Vt. 2012) aff'd, 511 Fed. App'x. 110 (2d Cir. 2013) ("[a] court must not engage in a *post hoc* effort to supplement the reasoning of the ALJ"); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) ("[a] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action"). The Second Circuit has made it clear that "the propriety of agency action must be evaluated on the basis of stated reasons". Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir.1983).

Because ALJ Cordovani failed to properly weigh LMHC Marek's opinion, or to otherwise develop the record to include an assessment of plaintiff's functional limitations from some other mental health professional, his RFC is not supported by substantial evidence, and this case must be remanded for further administrative proceedings.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [11] is granted to the extent that this case is remanded for further proceedings consistent with the issues discussed above but is otherwise denied, and the Acting Commissioner's motion for judgment on the pleadings [16] is denied.

Dated: November 15, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge